The Governing Body is the重点  Mr. Carpenter, when you're ready. Thank you very much, Your Honor. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. Philip Andre. This case deals with the interplay between a VA regulation at 38 CFR 3.303C, which deals with certain conditions which are not eligible or considered to be diseases, and the statutory presumption of sound condition under 38 U.S.C. Section 1111. We believe that the District Court in its decision below incorrectly interpreted the provisions of 3.303C as interpreted by the VA by multiple VA General Counsel opinions. In this case, it is an undisputed fact that the entrance examination for Mr. Andre did not disclose any psychiatric abnormalities. That is especially relevant in the application and consideration of 3.303C. In its title, 3.303C refers to disabilities which existed prior to service. Therefore, if a veteran is admitted to service with a presumption of being in sound condition, then by that very presumption it is not possible that a disability exists prior to service unless that presumption is rebutted. But I've had a little trouble with the first evidence of psychosis is many years after the service, after separation from the service. That's correct, Your Honor. Now, the presumption of soundness would help you if there was some preexisting question of whether there was psychosis earlier in his life, and then the presumption of soundness would wipe that away and it would work to help you. But I'm trying to figure out the whole question here is that there was no psychosis until after the service. So where is there psychosis evidence at all linked to the service? That's the question. That evidence is in the 1973 VA examination, and in that VA examination, the VA examiner said that the schizophrenic reaction that he diagnosed as existing in 1973 was a continuation of the dependent passive personality which was diagnosed in service. Sure, but the psychosis has to be within a year of service or linked to the service. The first evidence you have is 1973, and you say, oh, but we can date it back. That's a continuation. You're asking us to do facts now. Oh, no, Your Honor. We can't do facts. No, no. Yes, you are. No, I'm not, Your Honor. You're asking us to make a finding that there was a factual continuation going back to service. You've got to show us a record that either has it in the service or within a year of the service, don't you? No, with respect, Your Honor, you're adjudicating the end result. This case is not about the adjudication of the end result. This case is about the interaction between 303C and the presumption of soundness. Does the fact that during service alone there was a condition that could have been a personality disorder preclude the operation of the presumption of soundness? The court below held that it did. That is in contradiction to- Well, that's because the reg says personality disorders are not diseases or injuries, period. They do if they are disabilities which existed prior to service, Your Honor. But they define personality disorders as non-compensable, period. That's correct, Your Honor. So if we accept the proposition that we're stuck with the diagnosis of a personality disorder, then that's the end of the inquiry, isn't it? It would be, but for the VA's own interpretation of its regulation, which says that first and foremost that the presumption of soundness does apply, and secondly, it defines the difference between a congenital or developmental abnormality, a personality disorder, and a disease. And they define that difference as being a condition that is stationary in nature, which means if he had a personality disorder, that was what he had continuously. But section 4.9 of the CFR, it says mere congenital or developmental defects, absent displacement or supernumerary parts, refractive error of the eye, personality disorders, and mental deficiencies are not diseases or injuries in the meaning of the applicable legislation for disability compensation purposes. That's correct, Your Honor. They say no matter what, we want to be crystal clear, you can't get compensation for these items. So what does it matter about the presumption of soundness? I feel like you're arguing fine points of something when you've got this gigantic regulation staring you in the face. I also have an interpretation by the VA that defines the difference between disease and defect and explains that this is not a defect. This was not a personality disorder simply because it was diagnosed during service. We can't reach whether it is or isn't a personality disorder. That's a question of fact. So we have this question of fact that he's got this personality disorder, and we've got a regulation that says personality disorders are not compensable, period. Forget about 303. And Mr. Andre is not seeking compensation for the personality disorder. Mr. Andre is seeking compensation for the schizophrenic reaction which was diagnosed post-service and was related by a VA examiner to what happened during service. And the VA's own interpretations of 3.303c say that if it is a continuation of that condition and it got worse, meaning it went from what was perceived to have been a personality disorder into something quite different, a schizophrenic reaction, that schizophrenic reaction is compensable. Right. Even if we accept your proposition, though, that there is some confusion here in the medical analysis, because if something's a personality disorder, which means that it's a defect and it's already established, how does it grow into a psychosis so that there is some question about how they ended up getting to where they got? But even if we accepted that proposition, what we'd have to conclude is that because of this later diagnosis, that that means the earlier diagnosis must have been wrong. No, Your Honor, it does not. Number one, I don't believe that this was a diagnosis. This was what was perceived to have been the condition. And it was not described as a personality disorder. It described symptomatology. It described a passive, dependent personality. It described what was being presented to the people in the military at the time. And as a consequence, he was put out of service. The fact of the matter is that that condition was not correctly diagnosed. But that's why the presumption of soundness is so critical. Because in 1111, it says every veteran shall have the benefit of that presumption when nothing is noted at service. But you're challenging the fact-finding now, see, because it was found to be a personality disorder. No, Your Honor. It was noted as a dependent, passive personality. It was not found. If there was medical evidence... Page 37, Mr. Carpenter, page 37 of the record, which is the 1966 Medical Board Report, patient suffers from emotionally unstable personality, passive, dependent type. The Veterans Court and the VA below held this was a diagnosis of personality disorder. We can't contradict that fact-finding. And under the VA's own interpretation of 3.303c, that does not preclude consideration of the presumption of soundness. And in order to apply 3.303c, the VA has to establish that this condition existed prior to service. Its existence in service is not sufficient under the VA's own interpretation of 3.303c. But they don't have that burden if it was a personality disorder. That's correct, Your Honor. If it was a defect, they don't have that burden. That's correct. And if the presumption of soundness cannot be rebutted, if they cannot establish that a personality disorder existed prior to service, then 3.303c cannot operate. The regulations presume that if it's a personality disorder, it necessarily existed. Not as interpreted by the VA in multiple general counsel opinions that are cited in the brief. Now, that has certainly been the common understanding up to this point. Can I ask one other question? Yes. I thought, do you dispute, was there a fact finding that he suffered from this condition prior to service? And the reason I ask is because the same 1966 report says he admits to having seen these giant rats on and off for the last five years. Well, he was only in service in 1965 and 1966. This report is dated 1966. He is conveying to the medical examiner that he's been seeing these rats that disturbed him, these hallucinations, for five years. So isn't that demonstrating quite clearly that the hallucinations he was suffering from in 1966 by his own admission had predated his service? Yes, and that's a psychosis, Your Honor. That's not a personality disorder. Hallucinations are not associated with a personality disorder. That's why a personality disorder is considered not to be a psychiatric disease under the meaning of 1110. But the VA itself interpreted 1110 in its general counsel's opinion and said that it is a stationary condition. And that condition should have existed as a personality disorder prior to service in order for it to be substantiated to have been a personality disorder in service. I don't follow you. He saw these rats. He had hallucinations by his own admission for five years prior to entering service consistently. So how is this not a pre-existing condition? How does he benefit from the presumption of soundness when by his own admission he had this condition before he entered service? But, Your Honor, I'm sorry. That only proves he had psychosis prior to service. It does not prove he had personality disorder. And if he had a psychosis during service... Well, but you can't get money for personality disorder. That's balk to the people. That's correct. And he's not seeking compensation for a personality disorder. So he had hallucinations prior to service by his own admission, during service, following service. How are we to conclude that that is service-connected when by his own admission the exact same condition he suffered from after service he suffered from before he ever entered service? Because the question then becomes, under the presumption of soundness, whether or not there is evidence that what happened in service was the natural progression of what existed before. And therefore you must know, medically, clinically, what existed before was a psychosis or what existed before was a personality disorder. If what existed before is a personality disorder, then that is precluded from compensation. Mr. Andre is being compensated as we speak for service connection for schizophrenia. Because he demonstrated that there was a relationship between what he had at the time. Had he been given the benefit of the presumption of soundness, the VA would not have been able, as a matter of law, to rebut that presumption. And therefore what happened in service, in combination with the diagnosis post-service by a VA examiner, was sufficient to establish compensation for the psychotic condition of schizophrenic reaction. I'll save the rest, Mr. Carpenter. Yes, sir. Okay, good. Ms. Kidmiller? Thank you, and may it please the Court. This Court should affirm the decision of the Veterans Court finding no clear and unmistakable error in the board report. Well, let me ask you something. You argue in the Veterans Court rendered an interpretation of 303C that I found quite perplexing. The interpretation as I understand it is under 303C that you claim that this language of this regulation is clear, that personality disorders are not ever compensable, not ever entitled to a presumption of soundness. And what I found confusing about that, I certainly see from 4.9 where you can get that they're not compensable, but 303C is quite clear. Pre-service disabilities noted in service. And then it goes on later on to explain that the personality structure manifested by a lifelong pattern of action or behavior, chronic psychoneurosis of long duration, shown to have existed prior to service with the same manifestations during service. So I guess my question to you, I'm sorry to take so long, but my question to you was 303C seems to me only to apply when you have a condition that pre-existed service and has manifested itself in the same way during service, and doesn't seem to be entitled to the broad and sweeping instruction the government is giving it or that the Veterans Claims Court gave it. So that's my question to you. I'm sorry to have taken so long to get it out. Two responses to that question, Your Honor. First, I direct your attention to the final sentence of 3.303C, and of course the version at issue in this case is from 1972 and is attached at tab 2 to our brief. That final sentence reads, congenital or developmental defects, refractive error of the eye, personality disorders, and mental deficiency as such are not diseases or injuries within the meaning of applicable legislation. Well, then what would have been the point of the entire very lengthy preceding part which talked about whether or not they were demonstrated prior to service with the same manifestations after service? If we're going to say that that final sentence means what you say it means, then everything that came before it is superfluous. I think that everything that comes before it is certainly not superfluous. I think it can be read as… What would be the point of explaining that you have to show it to have existed prior to service with the same manifestations during service if the final sentence means what you say it means? I think that's a be careful, if you will, to adjudicators when dealing with a personality disorder. Look at the evidence. I would direct more specifically the Court's attention to this Court's decision in Terry, a 2003 decision, and that decision pertained to one of these other conditions listed. Refractive eye. Exactly. Refractive eye. One of these other conditions listed in that final sentence and said very clearly it was reasonable for VA to conclude that the presumption of soundness is always rebutted by the medical evidence with respect to that particular condition. The same reasoning applies to the other conditions listed in that precisely same sentence. Because they are not diseases or injuries. Counsel, the difference is the refractive eye condition doesn't have this lengthy paragraph that says, in the field of mental disorders, personality disorders, blah, blah, blah, manifested by lifelong pattern, shown to have existed prior to service with the same manifestations during service. I mean, if the final sentence means personality disorders are never entitled to this presumption of soundness, then there would be no need for all of that that came before. So I guess why isn't the more logical reading, you're not entitled to the presumption of soundness, when the government can show you had the same symptoms beforehand and the same symptoms during service, that you're not entitled to the presumption of soundness under those conditions. Even if it wasn't noted on your medical exam when you came in. Well, I think that would be true in addition to the fact that personality disorders are simply not ever covered. The second to last sentence here ends with saying that these particular facts will be accepted as showing pre-service origin. Of course, if there's a pre-service origin to the personality disorder, that would be an additional explanation for why it's not covered. That's what this whole section is about. C is about pre-service disabilities noted in service. And the whole point of section C here is to allow the government to rebut the presumption of soundness or the presumption of soundness not to apply in certain enumerated circumstances. Am I understanding this right? Do I understand the regulation right and what the purpose of this C is? Yes, Your Honor. It's to describe certain principles and medical conditions that by their very nature pre-exist service. Well, that whole by their very nature pre-exist service, then why would they have made the government, why would they include in this regulation shown to have existed prior to service with the same manifestations during service? It seems to me that that's putting a burden on the government and the government's reading of this regulation in isolation is simply not supportful. If this final sentence were the only thing here, you'd win, but everything short of that, it's hard for me to sign off on the government's interpretation. Well, in addition to 3.303C and the Terry decision, which I've previously mentioned, and 4.9, which this Court previously mentioned, we also have 38 CFR 4.127, which says, again, personality disorder is not a disease or injury for compensation purposes. What about a defect? Is it a defect? A personality disorder? Yes, Your Honor, it is a defect. A defect, but it's not a disease or injury. That's correct. Let's turn to the argument Mr. Carpenter makes about whether or not there ever was even a diagnosis of a personality disorder. I mean, he makes a pretty good point that, you know, he's seeing rats and afraid to get in the water for fear that it's filled with rats and that later that he's clearly diagnosed with schizophrenia and they say it grew out of whatever this original condition was, then how could the original condition have been a personality disorder? Your Honor, I direct your attention to the 1973 rating decision. Mr. Andres argued this morning pointing to the evidence from a 1973 examination, and the regional office clearly in its decision considered that evidence, as well as the 1969 evidence that the Court previously referred to connected with Mr. Andres' initial discharge from service. The regional office had before it, this is page 34 of the joint appendix, which also says at the bottom, record on appeal 90, recognized there was a 1969 diagnosis of schizophrenic reaction, discussed this particular opinion that the Court has just asked about, at the end of the second full paragraph on the page. But then weighing all of that evidence concluded a psychotic condition was not diagnosed within the presumptive period following service, first shown to have existed in a report of hospitalization beginning in January 1969. The regional office therefore concluded that this psychosis was not service-connected, as is clearly stated on the next page. To the extent that Mr. Andres disagrees with that diagnosis or suggests that that diagnosis weighed the evidence incorrectly, it's well established that a disagreement with the weighing of the facts does not constitute clear and unmistakable error. It's important to keep that context in mind here. This is not a direct appeal. This is a challenge to a decision, a 1973 decision, which became final, and this is an attempt to show this very specific and rare kind of error, clear and unmistakable error. And a disagreement with the weighing of the facts this Court has held on many occasions and has spelled out in the regulation is not clear and unmistakable error. Even if this were a direct appeal where this Court could examine the case a little bit more differently, we have the precedent of Conley, a 2008 decision, which specifically held that this Court did not have jurisdiction over the claimant's argument there, that in addition to a diagnosed personality disorder in service, evidence also indicated the presence of a psychiatric disorder. So even in a direct appeal, this Court would not have jurisdiction over those claims. The regional office, the Board, and then ultimately the Veterans Court made clear that the only diagnosis, the only condition from which Mr. Andre suffered in service was this personality disorder, which is not compensable. The psychosis only developed later. There was no psychosis in service, as the Veterans Court explains at page 7 of the record. What about the 1966 report? I mean, it seems like a person... Look, I realize I'm not a doctor and I can't make fact findings. I can't even review fact findings in this case. But seeing large rats seems a lot more like a hallucination and schizophrenia than it does a personality disorder. A personality disorder is a social disorder. You can't get along with people. You can't work in a productive fashion. You're saying there was no evidence of the schizophrenia preceding his service, but... I'm not saying exactly that. I'm saying the regional office specifically recognized in 1973 that there had been previous doctors who said that this may be schizophrenia. But in 1973, weighing all of that evidence, the regional office made a finding that Mr. Andre was not suffering from psychosis, from schizophrenia. He only had a personality condition at the time. Now, in 1992, Mr. Andre successfully moved to reopen his claim and ultimately did receive benefits. And as the board explained in 1992, this is at page 98 of the record, the board looked at these earlier diagnoses, a later medical opinion from the 1980s, and a more recent opinion from the 1990s, and noted there that the doctor from the 1990s said that beside a personality disorder, that doctor suggested the veteran also had this brief reactive psychosis in service. The board said, weighing all of these opinions, we think that the evidence is an equipoise, 50-50, and ultimately based on that 1980s decision and the 1990s, or rather medical exam, not decision, and the 1990s medical exam reached this ultimate outcome, that there were in fact two disorders. But at the time, in 1973, and that's the question that's important for a Q claim, the facts known and as they existed at the time, the regional office did weigh those, consider those, and make a factual finding that only the personality disorder existed in service. In a Q claim, do we ever get to review fact findings? No, this court does not review fact findings in a direct appeal either. So what do we get to do in a Q claim in this case? Well, in this case, you're not arguing we have no jurisdiction, so obviously you agree that we have the right to review something, so I wanted to understand exactly what is it you think we're reviewing. You are reviewing the veterans court's conclusion that there was no clear and unmistakable error, that the decision made by the regional office was made on the facts, given the facts known at the time and the law at the time. See, this is where it gets tricky for me, because we can't review facts, but in a Q claim, of course we're reviewing facts. That's what a Q claim is. We're supposed to look back in 1973 and say, was it clear and unmistakable error for them to conclude that? And so I'm wondering, is Q an exception to our limit to jurisdiction to review facts? And if not, I don't see what we are actually reviewing. And perhaps my, let me try to clarify my prior... I think so, I believe so. It's important to keep in mind 7292, of course. This court is still operating under the jurisdictional grant of 7292. It looks for any errors in the interpretation of a regulation or a statute. I think Judge Rader was trying to, Chief Judge Rader was trying to help you out, and I'm wondering if that's your position. I think that what he was trying to maybe get you to was the notion that we're supposed to look just to make sure there did exist record evidence to support the fact-finding, and if they did, we can't do anything with it. Is that the government's position on what we are to do in a Q claim? It may or may not be what he was suggesting, but... Not precisely. First and foremost, this court looks at, Mr. Andre has alleged an error in the Veterans Court's interpretation of a regulation. This court has jurisdiction to review alleged errors in the interpretation of law, rule, or regulation. Here he's alleging that there was such an error in the Veterans Court's decision on Q. So this court has... He says you can't really just look at this as a fact-finding. What he's saying is that because they made the determination that they don't attach the presumption of soundness, that by definition it's more than just a fact-finding because there's a legal overlay to these conclusions with respect to whether we're talking about a personality disorder or not. And the legal overlay is both whether it's compensable and whether you attach the presumption of soundness. He alleges that legal error, a legal error relating to the interplay between the presumption of sound condition and 3.303C, but in this case it's impossible for him to then demonstrate, and I see that my time has run, but it's impossible to demonstrate that it's outcome determinative because of the factual findings that we have here. At the end of the day, all he had in service was a personality disorder, which is not compensable. And for these reasons and those in our brief, we ask you to affirm. Thank you, Ms. Kidmiller. Mr. Carpenter, you have about three minutes remaining. Thank you very much, Your Honor. Please, the Court, in 1973 the VA simply did not afford Mr. Andre the benefit of the presumption of soundness. Had they afforded him the benefit of the presumption of soundness, then they would have been required to demonstrate, as the regulation requires under 3.303C, that the manifestations that were observed in service existed prior to service and were the same. There is nothing the same about what's in this record about what was reported by the veteran as hallucinatory behavior and visions five years preceding service and what happened in service. What happened in service was characterized as a personality disorder. If the VA had given him the benefit of the presumption of soundness, they would not have been able to rebut it. They had conceded that there was a psychotic episode in service. They have a VA examiner who relates what happened in service to a post-service psychosis which they concede exists. Therefore, under the correct application of 3.303C with the benefit of the presumption of soundness, Mr. Andre should have his 1973 decision revised. Unless there are further questions, thank you very much, Your Honor. Thank you, Mr. Carpenter.